Juliette P. White (UT #9616)
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, UT 84111
Tel.: (801) 532-1234
Fax: (801) 536-6111

Annette L. Hurst (*pro hac vice pending*)
Geoffrey G. Moss (*pro hac vice pending*)
Jonathan Liu (*pro hac vice pending*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 S. Figueroa St., Suite 3200
Los Angeles, CA 90017
Tel.: (213) 629-2020
Fax: (213) 612-2499

*Attorneys for Plaintiff SUSE, LLC*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SUSE, LLC, <br><br> Plaintiff, <br><br> v. <br><br> THOMSON REUTERS CORP., an Ontario corporation, THOMSON REUTERS U.S., INC., and DOES 1 through 100, <br><br> Defendants. | **COMPLAINT** <br><br> **JURY DEMANDED** <br><br> Case No. 2;22-cv-00237 <br><br> Judge Dustin B. Pead |

Plaintiff SUSE, LLC ("SUSE"), by and through its undersigned counsel, for their complaint against Thomson Reuters Corp., Thomson Reuters U.S., Inc., (collectively, "Thomson Reuters"), and Does 1 through 100, alleges as follows:

1

## INTRODUCTION

1. Thomson Reuters first licensed software from SUSE's predecessor Novell in 2007, and in 2009 signed a new "Schedule" to that 2007 license for more than eight thousand copies of server software as well as a contract entitling Thomson Reuters to all software updates, upgrades, and bug fixes through 2012.

2. Despite the lapse of this agreement in 2012, Thomson Reuters continued to use the SUSE support portal, now called the SUSE Customer Center ("SCC"). From 2014 to 2021, various Thomson Reuters employees logged into and used the SCC. This password-protected website offers maintenance for SUSE software products, including those products Thomson Reuters (including its affiliates and predecessors) licensed from SUSE and its predecessors. Maintenance includes software updates, upgrades, documentation, and various options for self-service and organizational service. A single employee can service an entire organization using the support portal by downloading all necessary updates, upgrades, bug fixes, and documentation, as well as making support requests.

3. During the period from 2014 through 2020, multiple Thomson Reuters employees created "administrator" accounts and expressly agreed to the terms and conditions for use of the SCC. These standard terms and conditions included a requirement that Thomson Reuters purchase a support subscription for all SUSE software "acquired, installed, or deployed." Thomson Reuters IT "administrator" representatives agreed to that term many times, while also representing that they had the authority to do so on behalf of the entities installing the software and receiving the services. And these administrators used the SCC dozens of times between 2014 and 2020.

4.      In 2021, Thomson Reuters was in the process of migrating its data center operations to AWS.  Thomson Reuters' IT personnel reached out to SUSE through normal sales channels to discuss the possibility of new SUSE licenses to be used in connection with that migration.  SUSE quoted favorable terms for new licenses.  After receiving the quotes, Thomson Reuters surprised SUSE with an unexpected revelation.  In June 2021, Thomson Reuters asked SUSE to "grandfather" **1,376** copies of SUSE SLES server software into the new license deal.  Apparently, Thomson Reuters had been using and maintaining the software all along since its purported termination in 2012, and in the process had enjoyed a list price value of maintenance contracts worth many millions of dollars, exclusive of contractual late fees, all without paying for them.

5.      Thomson Reuters's ongoing use and maintenance of the server software was news to SUSE, since Thomson Reuters had allowed its prior agreement to lapse in 2012 and had not had a contract in place for maintenance of the software since then.  In August, SUSE hired a third-party auditor and requested an audit to understand the full scope of Thomson Reuters's deployment of SUSE software, as is its right under the contractual terms and conditions.  Thomson Reuters demurred and asked to negotiate commercial license terms instead of submitting to the audit.  Thomson Reuters promised to make an offer to rectify its outstanding maintenance obligations as part of the new license.  SUSE agreed to wait for a business proposal from Thomson Reuters for the new license to see if that would be sufficient to address the past amounts owing.

6.      Thomson Reuters's representatives then spent months dragging their feet.  They canceled meetings at the last minute, came to meetings unprepared, and failed to make any proposal.  After multiple promises to make a proposal, in February 2022 just before a scheduled meeting, Thomson Reuters canceled and announced that the person who had been responsible for

3

the negotiations was going on indefinite leave. It was obvious at this point that Thomson Reuters was giving SUSE the runaround. SUSE reissued the audit notice on March 2. This time, Thomson Reuters refused the audit, claiming it had no responsibility for the 1,376 instances of installed software servers that it had itself brought to SUSE's attention.

7. SUSE seeks an order for an audit and accounting of all SUSE software ever installed by any Thomson Reuters entity, subsidiary, or facility, damages in the form of fees for all software, maintenance and subscription fees for the years of access to the SCC for at least the 1,376 software servers that Thomson Reuters admits it had installed, as well as any others that are identified during the audit and accounting process, and late fees and contractual interest owing, as well as all other remedies available under the contract including attorneys' fees.

## THE PARTIES

8. SUSE is a limited liability company organized under the laws of the Commonwealth of Massachusetts, with its principal place of business located in Provo, Utah.

9. On information and belief, Thomson Reuters Corp. is a corporation organized under the laws of Ontario, Canada.

10. On information and belief, Thomson Reuters U.S., Inc. is a corporation organized under the laws of Delaware.

11. On information and belief, Plaintiff believes that Does 1 through 100, inclusive, are other liable subsidiaries or affiliates of Defendants. Plaintiff does not presently know the true names and capacities of the defendants sued herein as Does 1 through 100, inclusive. Plaintiff may seek leave of court to amend this Complaint to allege said defendants' true names and capacities once it ascertains this information.

## JURISDICTION & VENUE

12. This court has diversity subject matter jurisdiction over this action under 28 U.S.C. § 1332 because Plaintiff is seeking more than $75,000 in damages and Plaintiff is a Massachusetts corporation with its principal place of business located in Provo, Utah, while Defendant Thomson Reuters Corp. is a corporation organized under the laws of Ontario, Canada, and Defendant Thomson Reuters U.S., Inc. is a Delaware Corporation.

13. This Court has personal jurisdiction over Defendants because Defendants have consented to the exclusive personal jurisdiction of this court under the relevant Agreements between the parties.

14. Venue is proper in this Court because Defendants have consented to venue under the relevant Agreements between the parties which provides that this Court is the exclusive venue for which any claims arising out of or relating to the relevant Agreements may be brought.

## STATEMENT OF FACTS

### A. SUSE Develops and Sells Open-Source Software and Services

15. SUSE is an open-source software company that has been an international leader in the development and sale of Linux products to customers since 1994. SUSE develops and distributes a variety of Linux software products, including SUSE Linux Enterprise Server ("SLES"), an operating system built to support customers' physical, virtual, or cloud computing environments, including Amazon Web Services ("AWS"). SUSE continues to develop and distribute various software products and Linux-based operating systems.

16. SUSE's operating systems are built on top of an open-source Linux system, but customers may purchase licenses and maintenance and support plans for SUSE's software

products by subscribing to "maintenance," which entitles them to certain services such as product manuals, website support, telephone support, patches, and security updates for SUSE's software.

17. Ordinarily for corporate customers with SUSE software installed, there are IT personnel who provide support across numerous installed pieces of software and organizations. Accordingly, the number of persons seeking and obtaining support often does not correspond to the number of licenses installed. Customers paying for maintenance subscriptions offered by SUSE must actively do so for all Linux installations within their environment, such that there cannot be unmaintained installations during an active subscription period. Otherwise, it would be simple for a single person to obtain the relevant support and then propagate it throughout the relevant organizations without paying for it.

18. SUSE offers and sells its products and services, including maintenance for the SLES operating systems, based on established price lists.

19. SUSE has expended considerable effort and expense in developing and promoting the SUSE software and operating systems, as well as maintenance for such.

20. As a result of SUSE's extensive efforts, SUSE's software and operating systems, and the maintenance associated therewith, are valuable products and services.

      B.    **Thomson Reuters Licenses SUSE's Software Products**

21. In 2007, Novell, Inc. ("Novell") and Thomson Corporation Delaware, Inc. executed the Novell Linux Enterprise License Agreement ("License Agreement").

22. In 2009, Novell and Thomson Reuters U.S., Inc. executed a Schedule to the License Agreement granting Thomson Reuters U.S., Inc. and its Affiliates 8,000 licenses to versions of its

6

SUSE Linux Enterprise Server ("SLES"). Under the Schedule, Novell was not to provide technical support. The Schedule had a term of October 1, 2009 to September 30, 2012.

23. The License Agreement and Schedule terminated in accordance with their terms in 2012 and were not renewed.

      **C.**      **Thomson Reuters's Uses SUSE's Support Services Extensively**

24. In addition to licensing its software, SUSE offers support services through its SUSE Customer Center ("SCC") website.

25. Use of the SCC is governed by the SUSE Subscription Offering Terms and Conditions ("Subscription T&C").

26. According to SUSE's records, Thomson Reuters representatives clicked to accept the terms of the SCC T&C at least 9 times from 2014 to 2019, each time representing and warranting that they had authority to enter into such agreements, and thereby evidencing Thomson Reuters's assent to be bound by the Subscription T&C.

27. Eight of these users described themselves as "Admin of Organization," and among them used the SCC dozens of times between 2013 and 2020.

28. In addition, Thomson Reuters users created more than 100 SCC user accounts and accessed the SCC website using these accounts.

29. As applicable here, the terms of the Subscription T&C state:

    (a)    Thomson Reuters must "must acquire sufficient Subscription Offerings … to cover **all acquired, installed or deployed SUSE Products**." Section 5.2 (emphasis added).

(b) SUSE has the right to "inspect and audit [Thomson Reuters or its] contractor's, computers and records, during [their] normal business hours, for compliance with the terms of this Agreement." Section 7.

(c) The Subscription T&C will be governed by the substantive laws of the United States and State of Utah. Section 11.

(d) Suits arising out of or relating to the Subscription T&C "may only be brought before a federal or state court of appropriate jurisdiction in Utah." Section 11.

(e) In suits, "the prevailing party will be entitled to recover reasonable attorneys' fees." Section 11.

30. The Subscription T&C in effect on October 27, 2014, which Thomson Reuters agreed to through its agents, are attached hereto as **Exhibit A**.

31. The Subscription T&C in effect on March 2, 2015, which Thomson Reuters agreed to through its agents, are attached hereto as **Exhibit B**.

32. The Subscription T&C in effect on April 30, 2015, which Thomson Reuters agreed to through its agents, are attached hereto as **Exhibit C**.

33. The Subscription T&C in effect on May 21, 2015, which Thomson Reuters agreed to through its agents, are attached hereto as **Exhibit D**.

34. The Subscription T&C in effect on February 10, 2016, which Thomson Reuters agreed to through its agents, are attached hereto as **Exhibit E**.

35. The Subscription T&C in effect on August 21, 2017, which Thomson Reuters agreed to through its agents, are attached hereto as **Exhibit F**.

36. The Subscription T&C in effect on February 9, 2018, which Thomson Reuters agreed to through its agents, are attached hereto as **Exhibit G**.

37. The Subscription T&C in effect on April 12, 2019, which Thomson Reuters agreed to through its agents, are attached hereto as **Exhibit H**.

38. Upon information and belief, in both 2014 and 2015 Thomson Reuters obtained subscription support services for two SUSE server products. Thomson Reuters paid for these subscription support services.

39. Upon information and belief, Thomson Reuters also agreed to the Subscription T&C by purchasing SLES for SAP Applications on AWS in early 2019.

D. **Thomson Reuters Asks to "Grandfather" 1,376 SUSE Servers**

40. In 2019, Thomson Reuters started a project to consolidate parts of its technology infrastructure in the cloud (specifically AWS) instead of on-premises data servers.

41. In or about May 2021, SUSE submitted a bid to supply certain software products and services to support Thomson Reuters's move to AWS, including its SLES for SAP Applications on AWS product.

42. Upon information and belief, Thomson Reuters previously purchased licenses for SLES for SAP Applications on AWS to evaluate it for this project.

43. Thomson Reuters agreed to award the business to SUSE.

44. During these sales discussions, SUSE reminded Thomson Reuters of the Subscription T&C, specifically the term requiring a Subscription Offering for "all acquired, installed or deployed SUSE Products."

45. Thomson Reuters then admitted that it had 1,376 SLES servers they were running in their on-premises data centers for which Thomson Reuters had **not** purchased a Subscription Offering as required by the Subscription T&C. Thomson Reuters asked that the 1,376 SLES servers be "grandfathered in" as part of the sale of licenses for its cloud project to avoid a "compliance issue."

46. SUSE was unaware how Thomson Reuters was using SUSE software within its company (*e.g.*, the true number of copies of SUSE software products), and was unaware of the scope of Thomson Reuter's non-compliance until Thomson Reuters admitted it. SUSE asked for additional information about the 1,376 SLES server installations to better understand the situation. This information was solely in Thomson Reuters's possession. Thomson Reuters failed to provide the information requested by SUSE.

47. Since Thomson Reuters failed to provide additional information about its use of SUSE products—specifically the 1,376 SLES servers that Thomson Reuters admitted to having installed—SUSE decided to conduct an audit of Thomson Reuters, as was its right under the Subscription T&C.

48. In August 2021, SUSE sent a letter to Thomson Reuters Chief Operations and Technology Officer Kirsty Roth to introduce Deloitte, the company SUSE chose to conduct the audit.

49. SUSE's goal in conducting an audit was to better understand the scope of the compliance issue caused by Thomson Reuters's use of SUSE's software and failure to pay for subscription services. An audit would allow a neutral third-party to gather important,

independently verifiable information about Thomson Reuter's use of SUSE software without forcing SUSE to rely on representations of a party that hid its non-compliance for years.

50. Ms. Roth did not respond to the letter. Rather than proceed with the audit, Thomson Reuters asked for additional time so that it could make a proposal regarding payment of its back-maintenance and support. Thomson Reuters then began a campaign of dragging the compliance issue out as long as possible.

51. In the following months, SUSE was forthcoming with information, providing details about which users agreed to the Subscription T&C, demonstrating to Thomson Reuters how the SCC website works, and identifying which license registration codes corresponded with these users.

52. Thomson Reuters eventually provided minimal detail about the 1,376 SLES servers it hoped to "grandfather in" to a new licensing agreement. It also sent a rotating cast of characters to meet and negotiate with SUSE, each seeming to know less about the dispute and none empowered to resolve it.

53. On December 21, 2021, Thomson Reuters Senior Director of Service & Cost Optimization Andrew Blonski wrote to SUSE and announced an end to discussions about both (1) purchasing new SUSE software and (2) amounts owed to SUSE in subscription fees for the 1,376 SLES servers previously identified by Thomson Reuters. The letter did not explain why Thomson Reuters had volunteered that it had 1,376 SLES servers for which it did not purchase subscriptions and asked to "grandfather" these servers into a new sales deal if Thomson Reuters did not actually think it was out of compliance.

54. This escalation was exactly what SUSE sought to avoid by requesting an audit: objective data about the scope of an issue that Thomson Reuters caused, brought to SUSE's attention, and about which Thomson Reuters controls all relevant information.

55. On January 6, 2022, SUSE sent a letter demand for payment seeking subscription fees for each of the 1,376 SLES servers identified by Thomson Reuters for 2014 to 2021. A meeting was scheduled between the parties in February to discuss SUSE's demand. Shortly before the scheduled meeting, Thomson Reuters announced that its participant had taken an indefinite leave of employment.

56. On March 2, 2022, SUSE sent a renewed notice of audit to Thomson Reuters, identified a third-party auditor, and asked Thomson Reuters to contact the auditor to make arrangements to cooperate with and conduct the software audit.

57. On March 15, 2022, Thomson Reuters refused any audit, claimed it had no obligation of any kind to SUSE despite its earlier request to "grandfather" subscriptions and its many years of use of the SCC, and denied that it had entered into any contract with SUSE.

### CAUSES OF ACTION
### COUNT 1
### (Breach of Contract)

58. SUSE realleges and incorporates by reference the preceding allegations in paragraphs as if fully set forth hereat in their entirety.

59. Thomson Reuters, by and through its agents, agreed to the terms of the Subscription T&C. The Subscription T&Cs are a valid, enforceable, two-party contract that was accepted by Thomson Reuters.

60. Thomson Reuters breached and continues to breach the Subscription T&C by failing to purchase Subscription Offerings for each SUSE product acquired, installed, or deployed, including SLES.

61. Thomson Reuters further breached and continues to breach the Subscription T&C by refusing to allow SUSE to conduct an audit to determine the extent to which Thomson Reuters failed to purchase Subscription Offerings for each SUSE product acquired, installed, or deployed.

62. As a direct and proximate result of Thomson Reuters's breach of the Subscription T&C, SUSE has suffered and is continuing to suffer damages, in an amount well in excess of the jurisdictional minimum of this Court to be determined at trial.

## PRAYER FOR RELIEF

A. For judgment in favor of SUSE against Thomson Reuters on SUSE's breach of contract claim;

B. For an award of damages to SUSE for Thomson Reuters's breaches of contract, including but not limited to contractual subscription fees, late fees and interest;

C. For an order allowing SUSE to conduct an audit of Thomson Reuters's computer systems to identify all SUSE software installed on Thomson Reuters' computers from 2014 to the present;

D. For an accounting of all SUSE software installed on Thomson Reuters' computers from 2014 to the present;

E. For an award of its attorney's fees and expenses, pursuant to the terms of the Subscription T&C, or any other basis permitted by law;

F. For an award of pre-judgment and post-judgment interest on all applicable amounts;

G. For an award of costs of suit; and

H. For such other and further relief as the Court may deem just and proper.

## JURY DEMAND

SUSE demands a trial by jury on all issues so triable

DATED this 5th day of April, 2022.

                                                PARSONS BEHLE & LATIMER

                                                /s/ Juliette P. White
                                                Juliette P. White

                                                *Attorneys for Plaintiff SUSE, LLC*