IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SUSE, LLC,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>THOMSON REUTERS CORP., an Ontario corporation, THOMSON REUTERS U.S., INC.,<br><br>　　　　Defendants. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT<br><br>Case No. 2:22CV237-DAK-CMR<br><br>Judge Dale A. Kimball<br>Magistrate Judge Cecilia M. Romero |

This matter is before the court on Defendants' Motion to Dismiss Plaintiff's First Amended Complaint. On September 13, 2022, the court held a hearing on the motion via Zoom videoconferencing. At the hearing, Plaintiff SUSE, LLC ("SUSE") was represented by R. David Sop, Jonathan J. Liu, Geoffrey G. Moss, and Juliette P. White. Defendants Thomson Reuters Corp. and Thomson Reuters U.S., Inc. (collectively "Thomson Reuters") were represented by Richard M. Assmus, David A. Cox, and Matthew D. Moscon. The court took the motion under advisement. After carefully considering the memoranda filed by the parties and the law and facts pertaining to the motion, the court issues the following Memorandum Decision and Order denying Defendants' Motion to Dismiss Plaintiff's First Amended Complaint.

**LEGAL STANDARD**

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

1

draw the reasonable inference that the defendants are liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a motion to dismiss, the court assumes the truth of "all well-pleaded facts in the complaint, and draw[s] all reasonable inferences therefrom in the light most favorable to the plaintiffs." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

## FACTUAL BACKGROUND

Plaintiff SUSE is a public software company that offers packages of open-source software and related support services. Defendant Thomson Reuters has utilized SUSE software for its systems since 2007. According to SUSE, its software licenses are built on a service subscription model, in which those SUSE customers that opt-in to service subscriptions pay to use SUSE's services to update and maintain the software. For this service subscription model to be fair and economically viable for SUSE and beneficial to SUSE's customers, customers are required to purchase a subscription for each and every installation deployed. For example, a customer who has ten SUSE software installations must pay for ten service subscriptions in order to access SUSE's customer service. Otherwise, according to SUSE, it would be technologically possible for a customer to pay for one single service subscription but use the knowledge and software obtained from that single subscription to maintain and maximize the benefits to all ten installations. Because SUSE makes money primarily from the subscription model, that sort of theft of services would quickly put SUSE out of business if it were permitted. According to SUSE, Thomson Reuters, as a longtime user of SUSE's software, has always been aware of this model.

Pursuant to a 2007 agreement (and an associated 2009 schedule) (collectively, the "2007 Agreement") between Novell, a predecessor of SUSE, and a predecessor of Thomson Reuters U.S., Thomson Reuters obtained certain software and software support services for a period from September 28, 2007, to September 30, 2012, When the 2007 Agreement expired in 2012, Thomson Reuters U.S. elected not to renew its subscription to that support. According to Thomson Reuters, it has since then continued to operate the software it received from Novell without support under a perpetual license granted pursuant to the 2007 Agreement.

According to SUSE, however, in 2014, despite not having support subscriptions, Thomson Reuters employees started creating logins for the SUSE Customer Center ("SCC"), a support website for SUSE software. In so doing, Thomson Reuters employees agreed to the terms and conditions of the SCC that governed these support subscriptions (the "Subscription T&Cs"). The Subscription T&Cs stated, in effect, that when Thomson Reuters purchased a support subscription for one installation of SUSE software, it agreed to purchase a support subscription for all such SUSE software. SUSE alleges that since 2014, Thomson Reuters has been purchasing or otherwise obtaining support subscriptions for SUSE software a few at a time—instead of for *all* SUSE software installations as required under the Subscription T&Cs. SUSE contends that beginning in 2012, Thomson Reuters started actively decommissioning servers running SUSE software, though it still maintained at least one thousand such installations at the time SUSE filed its Complaint in 2022.

SUSE also claims that following the termination of the 2007 Agreement in 2012, and in particular during the relevant time period between 2014 and 2021, SUSE had no visibility into the number of SUSE software installations maintained by Thomson Reuters and that SUSE still

3

has no such visibility. SUSE also asserts that it had no reason to suspect that Thomson Reuters was maintaining thousands of SUSE installations after allowing its service support subscription to terminate in 2012. As a result, SUSE claims that for more than eight years, while Thomson Reuters should have been paying SUSE for thousands of support subscriptions each year, reflecting Thomson Reuters' *actual* use of SUSE software, it paid for only a handful of support subscriptions. In so doing, SUSE argues that Thomson Reuters was in direct violation of the Subscription T&Cs agreed to by its employees, concealed its breaches, and failed to disclose the number of installations it had to avoid paying millions of dollars of support fees owed to SUSE. Moreover, SUSE alleges that Thomson Reuters is a company well-versed in the nature of software subscription service because that model is how Thomson Reuters earns the bulk of its revenue.

In addition, according to SUSE, while Thomson Reuters still had a perpetual license to the SUSE open-source software it had installed, such use was conditioned on otherwise complying with the End User License Agreement ("EULA"), which had been incorporated into the 2007 Agreement and which required Thomson Reuters to maintain sufficient service subscriptions for all installations to the extent it chose to access any support from the SUSE support portal. SUSE contends that Thomson Reuters admitted its wrongdoing in 2022 in connection with the negotiation of a new contract, when Thomson Reuters disclosed that it still maintained thousands of SUSE installations.

Thus, in the instant action, SUSE alleges that Thomson Reuters has been in violation of the various license agreements covering the use of this software since 2014. In its Complaint, SUSE has asserted two breach of contract claims against Thomson Reuters: Count 1 alleges a

4

breach of the Subscription T&Cs, and Count 2 alleges a breach of the 2007 Agreement. More specifically, SUSE claims that: (1) SUSE provided mission critical open-source software to Thomson Reuters; (2) from 2014 through 2022, Thomson Reuters entered into click-through licensing agreements that provided subscription access to SUSE's Customer Center ("SCC"); (3) under those click-through license agreements, Thomson Reuters was obligated to pay for service subscriptions for *each* of the SUSE software installations it was running; (4) over an extended period of time, Thomson Reuters paid for service subscriptions for only a fraction of the SUSE installations it was running; (5) Thomson Reuters concealed and failed to disclose the true number of installations it was running, and SUSE had no technological ability to know how many installations Thomson Reuters was running; and (6) as a result, Thomson Reuters drastically underpaid SUSE for service subscriptions that should have been paid on thousands of software installations over the course of nearly a decade.

      In its Motion to Dismiss, Thomson Reuters argues that SUSE's First Amended Complaint suffers from three independent defects. First, both SUSE's breach of contract claims under the Subscription T&Cs (first allegedly entered and breached in 2014) and the 2007 Agreement (also allegedly breached in 2014) are time barred under the applicable statute of limitations, which is six years under both Utah law (governing the Subscription T&Cs) and New York law (governing the 2007 Agreement). Thomson Reuters contends that SUSE had notice of the alleged breaches of both contracts in 2014—eight years before the Complaint was filed—and accordingly all of the claims must be dismissed. Second, according to Thomson Reuters, SUSE has failed to adequately plead the existence of a valid contract (because it has failed to identify the parties) or performance by SUSE. Indeed, according to Thomson Reuters, such performance is—by

SUSE's own referenced documents—unavailable for the 2012 version of the software that Thomson Reuters perpetually licensed. Finally, Thomson Reuters claims that the breach of contract claims should be dismissed because the terms of the Subscription T&Cs are too indefinite to constitute enforceable contracts and, because SUSE's claim of breach of the 2007 Agreement is predicated on the alleged breach of the Subscription T&C, it too must fail.

In opposition, SUSE argues that to avoid the consequences of its deliberate contractual breaches, Thomson Reuters asks this court to excuse its wrongdoing by applying technical dodges that have no basis in the law. SUSE contends that Thomson Reuters cannot dispute any of these allegations when the court must accept its well-pled allegations as true in the context of its Motion to Dismiss. SUSE further argues that Thomson Reuters seeks to evade responsibility for its admitted breaches by arguing that the statutes of limitations bar SUSE's claims, notwithstanding Thomson Reuters' deliberate efforts to conceal its ongoing breaches. SUSE also argues that Thomson Reuters expects SUSE to plead facts that are solely in Thomson Reuters' possession. Finally, SUSE takes issue with Thomson Reuters' complaints that the agreements its employees entered into were somehow unclear, even though Thomson Reuters has more than fifteen years' experience in contracting with SUSE under the same terms and conditions, and it is an entity that is intimately familiar with such subscription licensing terms and conditions because Thomson Reuters itself is a company that requires such subscription revenues to survive. Each of the arguments will be addressed in turn.

## DISCUSSION

I.    **Thomson Reuters' Statute of Limitations Arguments**

Thomson Reuters argues that SUSE's First Amended Complaint should be dismissed because its breach of contract claims were filed beyond the six-year statute of limitations. The alleged breaches of the Subscription T&Cs (Count 1) are governed by Utah law and its six-year statute for breach of contact. The alleged breaches of the 2007 Agreement (Count 2) are governed by New York law and its six-year statute.

Despite Thomson Reuters argument to the contrary, the breaches that occurred within the statutes of limitations (i.e., the breaches that are alleged to have occurred between 2016 and the date SUSE filed its Complaint are not time-barred). In Count 1, SUSE alleges that Defendants breached eight different agreements—the Subscription T&Cs—between 2014 and when it filed this lawsuit in 2022. Utah law applies to these contracts and the default statute of limitations for breach of contract actions is six years. Utah Code Ann. § 78B-2-309. The breach of contract claims that arose within six years of the filing of this lawsuit unquestionably fall within the statute of limitations. As for the alleged breaches that occurred more than six years prior to filing the instant action, the court declines to dismiss those claims at this stage of the litigation because SUSE has sufficiently pleaded facts that support equitable tolling of the statute of limitations based on the discovery rule. In Utah, the equitable discovery rule tolls the statute of limitations: "(1) 'where a plaintiff does not become aware of the cause of action because of the defendant's concealment or misleading conduct,' and (2) 'where the case presents exceptional circumstances and the application of the general rule would be irrational or unjust, regardless of any showing that the defendant has prevented the discovery of the

cause of action.'" *Russell Packard Dev., Inc. v. Carson*, 108 P.3d 741, 747 (Utah 2005) (quoting Walker Drug Co. v. La Sal Oil Co., 902 P.2d 1229, 1231 (Utah 1995)). Here, SUSE has adequately pled facts for equitable tolling to apply.

In Count 2, SUSE alleges that Thomson Reuters breached the 2007 Agreement by failing to comply with the various Subscription T&Cs. Again, the breach of contract claims that arose within six years of the filing of this lawsuit unquestionably fall within the statute of limitations. As for the alleged breaches that occurred between 2014 and 2016, the court declines to dismiss those claims at this stage of the litigation because SUSE has adequately pled facts to invoke New York's continuing wrong doctrine. This continuing wrong doctrine "is usually employed where there is a series of continuing wrongs and serves to toll the running of a period of limitations to the date of the commission of the last wrongful act." *Garron v. Bristol House, Inc.*, 162 A.D.3d 857, 858-59, 79 N.Y.S.3d 265, 267 (2018) (citing *Selkirk v. State of New York*, 249 A.D.2d 818, 818-819, 671 N.Y.S.2d 824, 825 (1998)) (overturning trial court order dismissing breach of contract claims).

SUSE has adequately pleaded that the 2007 Agreement, including the license grant for SUSE's software, contains a continuing obligation to comply with the Subscription T&Cs.[1] SUSE has also alleged that Defendants have repeatedly breached the Subscription T&Cs, and thus the 2007 Agreement, by having purchased an insufficient number of support subscriptions.[2] The nature of each of these breaches was distinct, as SUSE has alleged that Defendants have engaged in a practice of purchasing what SUSE now realizes were an insufficient number of support subscriptions, all while having a varying number of SUSE software installations

---

[1] FAC ¶ 97, ECF No. 34.
[2] FAC ¶¶ 35-41, 91-101, ECF No. 34.

throughout the years.[3] Accordingly, the court finds that SUSE adequately pleaded facts sufficient to toll the statute of limitations for the 2007 Agreement.

## II. Thomson Reuters' Contract-Based Arguments

Thomson Reuters argues that SUSE's claims fail because (1) SUSE has failed to adequately plead that the Subscription T&Cs are properly formed contracts because SUSE did not identify the parties to the Subscription T&Cs; (2) SUSE has failed to plead adequate its performance of the Subscription T&Cs; and (3) the terms of the Subscription T&Cs are too indefinite to constitute enforceable contracts.

At the motion to dismiss stage before discovery has begun and when, as SUSE has alleged, much of the information is in Thomson Reuters' possession, the court finds that SUSE has pleaded sufficient factual content to allow the court to draw reasonable inferences that Thomson Reuters may be liable for the alleged misconduct. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, at this point in the litigation, the court declines to dismiss SUSE's claims based on Thomson Reuters' claimed deficiencies regarding the contracts.

## CONCLUSION

For the foregoing reasons, the court DENIES Thomson Reuters' Motion to Dismiss Plaintiff's First Amended Complaint [ECF No. 38].

DATED this 19th day of December, 2022.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge

---

[3] FAC ¶¶ 9, 71, ECF No. 34.